

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 1, 2019

**BY ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
New York, New York 10007

    Re:    *United States v. Don Michael Carim*, 17 Cr. 390 (ALC)

Dear Judge Carter:

    The Government respectfully submits this letter in connection with the sentencing of the defendant, Don Michael Carim, which is scheduled for April 8, 2019, at 10:00 a.m. For the reasons set forth below, the Government submits that a sentence below the stipulated Guidelines range of 46 to 57 months of imprisonment is appropriate in this case.

    **A. Offense Conduct and Procedural History**

    As the Court is aware from having presided over the trial of David Taylor, the defendant was a member of a conspiracy to distribute and possess with intent to distribute oxycodone. PSR ¶ 15. David Taylor was a licensed physician who owned and operated his own medical practice on Staten Island, New York. *Id.* ¶ 16. In exchange for cash and gifts, Taylor prescribed large amounts of oxycodone to patients who did not need it, and were instead funneling the oxycodone to drug dealers or were taking the pills to feed their oxycodone addictions. *Id.* ¶ 16.

    As part of the conspiracy, Taylor agreed with Vito Gallicchio—the "crew chief" of the operation—to prescribe oxycodone to phony patients referred to Taylor by Gallicchio in exchange for cash and gifts, including office furniture, appliances, single malt scotch, cigars, and food. PSR ¶ 18. In addition to prescribing oxycodone to Gallicchio himself, Taylor also prescribed oxycodone to several phony patients referred by Gallicchio, including the defendant, Don Michael Carim. *Id.* In turn, the defendant and others then sold their pills to Gallicchio.

    Gallicchio recruited the defendant, who was dating Gallicchio's niece, into the conspiracy. To obtain oxycodone pills, Carim gave Taylor old MRIs and x-rays, which did not show any medical condition that would have legitimately been treated with oxycodone. Over a three-year period, Carim was prescribed between 180 and 240 oxycodone 30mg tablets per month, which he sold to Gallicchio. Carim did not take the pills, and on multiple occasions tested negative for oxycodone and positive for an illicit substance, including cocaine. In 2017, while he was still being prescribed oxycodone by Taylor, Carim obtained a letter from Taylor clearing him for

Hon. Andrew L. Carter, Jr.  Page 2
April 1, 2019

participation in the Fire Department of New York exercise program. Gallicchio paid the defendant a few hundred dollars every month for his pills. In total, as part of the conspiracy, Carim unlawfully distributed approximately 198 grams of oxycodone from 2014 to 2017.

### B. Procedural History

On October 29, 2018, the defendant pled guilty before Magistrate Judge Netburn to one count of conspiracy to distribute and possess with intent to distribute oxycodone, pursuant to a plea agreement with the Government. The Court later accepted the defendant's guilty plea.

The defendant is the first of seven charged and convicted members of the conspiracy to be sentenced.

### C. Discussion

#### 1. Applicable Law

As the Court is well aware, although the Guidelines are no longer mandatory, they provide strong and relevant guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that range "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has remarked *en banc*, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a), including, among others, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, including:

>    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>    (B)   to afford adequate deterrence to criminal conduct;

Hon. Andrew L. Carter, Jr.  Page 3
April 1, 2019

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent the District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 50).

### 2. A Substantial Sentence Below the Guidelines Range is Appropriate in this Case

As an initial matter, the defendant's offense conduct is extremely serious and merits a substantial sentence. The defendant accepted money to help others obtain and sell an enormous amount of oxycodone, a powerful and highly addictive painkiller. The defendant and his co-conspirators exploited and profited off the opioid epidemic that is destroying lives and devastating communities in this city and throughout the country. He was involved in this scheme over a three-year period, and plainly did not need any oxycodone, let alone such a high dosage. Such conduct demands a serious sentence, one that promotes respect for the law and that deters the defendant and others from committing similar crimes in the future.

The Government acknowledges, however, certain mitigating factors that make a below-Guidelines sentence appropriate in this case. *First*, the defendant was a minor participant in the conspiracy and is less culpable than other members of the conspiracy, like Taylor and Gallicchio. In addition to his desire for money, the defendant's participation in the scheme was instigated by Vito Gallicchio, whom the defendant viewed like an uncle. *Second*, the defendant has battled alcohol and substance abuse throughout his life, and was evidently using cocaine during at least part of the time he was participating in the charged criminal scheme. *Third*, the defendant served honorably in the United States military and, based on proffers from his counsel, suffers from post-traumatic stress disorder. *Finally*, a felony conviction has already resulted in collateral consequences for the defendant's life and career. Specifically, as a result of this case, the defendant lost his job with the New York City Fire Department.

Hon. Andrew L. Carter, Jr.            Page 4
April 1, 2019

      For the reasons set forth above, the Government submits that a sentence below the stipulated Guidelines range of 46 to 57 months of imprisonment is appropriate in this case.

      Respectfully submitted,

      GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York

By: _____
      Justin V. Rodriguez
      Kiersten Fletcher
      Nicholas Roos
      Assistant United States Attorney
      (212) 637-2591

cc:    Counsel of Record (by ECF)